## MICHAEL THOMPSON
### *vs.*
## THOMAS F. BOWIE.

1. Promissory notes given for a gambling debt are void even in the hands of a *bona fide* indorser for value without notice of their origin.
2. While the law presumes a promissory note to have been given for a valid consideration, yet the circumstances of the case may rebut that presumption, and it is then incumbent upon the holder to show the true consideration.
3. Evidence that it was the habit of the maker of the promissory note to gamble when drunk, and that he was drunk on the day of the making of the note, and that the payee of the note was a professional gambler is admissible for the purpose of showing that the note was given for a gambling debt.*

At Law. No. 109. Decided Nov. 12, 1864.

MOTION for a new trial on a bill of exceptions in an action of assumpsit.

The suit was brought to recover the amount of three promissory notes made by Bowie on the 1st of January, 1857, for $1,000 each, payable to the order of one Frank Steers, from whom the plaintiff purchased the notes before maturity.

The defense was, that the notes were given for a gaming consideration, and that they were, therefore, void in the hands of even a *bona fide* holder for value. To make good the defense, the counsel for Bowie were able only to introduce circumstantial evidence, which was in effect that Steers, the payee of the notes was a common gambler, and at the time the notes were given was the keeper of a gambling house on Pennsylvania avenue, and that he had no

---

*This case was reversed upon this last point by the Supreme Court of the United States, which held that "evidence of the habit of the maker of a note to gamble when drunk, is *not* admissible to show that a promissory note made by him, was given for money lost at play." See Thompson *vs.* Bowie, 4 Wall., 463.

other business and was possessed of no property. They also showed that the body of each of the notes was in the handwriting of John E. James, another common gambler, and a habitue of Steer's establishment, and that there was another note made by Bowie of a like amount and date, made payable to the order of John Campbell, another gambbler and employee of Steers, to deal faro. They also proved that on the day of the date of the notes that Bowie was grossly intoxicated and entirely unfit for any business whatever, and that when under the influence of liquor he had a propensity which he could not control to visit gambling establishments and play at their games.

The exception was to the ruling of the Court, in admitting this evidence.

MESSRS. ROBERT J. BRENT and R. T. MERRICK for plaintiff.

1. It was error in the Court below to admit evidence showing that when intoxicated, it was defendant's *propensity* to gamble. If A had money stolen, could he recover from B on proving B's propensity to steal? Could A defeat B's recovery at law by proving that B had a propensity to make usurious contracts. Jackson *vs.* Smith, 7 Cowen, 717.

It was error to allow the defendant to read in evidence a note executed in favor of one Campbell and indorsed by him to one Johnson on proving that the said Campbell frequented the gaming house and assisted the said Steer in gambling. Beauchamp *vs.* Parry, 1 Barn & R., 89; 6 Dowl. & Ry., 379, 1 R. & M., 212; United States *vs.* Dunn, 6 Pet., 57; Shaw *vs.* Bronne, 4 D. & R., 731; 3 Phil. Ev., 289; Bristol *vs.* Dan., 12 Wend., 142.

If there were no error in admitting this testimony, yet there was error in refusing to instruct the jury that this evidence, taken with the other facts, did not constitute sufficient evidence to prove a gaming consideration.

The plaintiff stood in Court as a *bona fide* purchaser of a

negotiable security, with every presumption in his favor, and a violation of law cannot be presumed. 3 Kent, 80, note a; Swift vs. Tyson, 16 Pet., 1.

Endorsement presumed to be on day of date, and for valuable consideration, and *onus* on defendant to overturn this presumption. 6 Md., 338; Pinkerton vs. Bailey, 8 Wend., 602; Webster vs. Lee, 5 Mass., 335; 3 Day, 311.

Direct evidence is required to overturn the presumption of the legality of a contract, and mere conjecture will not suffice. Torringer vs. McBurney, 5 Cowen, 253; Witten vs. Flardesty, 16 Md., 16; Corner vs. Pendleton, 8 Md., 337; United States vs. Dunn, 6 Pet., 57; 1 Phil. on Ev., 605, 607.

Suppose all the evidence were embodied in a special demurrer, it must have been sustained. There was no connection direct or indirect shown between the gambling houses of Steer and the execution of these notes, and the Court should have charged the jury that the evidence was insufficient. Stockett, vs. Ellicott, 3 G. & J., 126; Belt vs. Mariott, 9 Gill., 334; Morton vs. Bowie, 3 Md., 251; Thurston vs. Lloyd, 4 Md., 283; Gray vs. Cook, 12 G. & J., 236.

MESSRS. WALTER S. COX and SAMUEL L. PHILLIPS, for defendant:

By the Statute of 9 Anne, ch. 14, sec. 1, which is reported as being in force in the District of Columbia, the notes are not voidable, but absolutely void, under any and all circumstances. Being void, they can receive no new life or efficiency from the hands of an innocent holder.

It is so laid down in Story, Prom. Notes, sec. 192, and the authorities there cited; and also in the following additional and later authorities it is distinctly held that a negotiable note given for a gaming consideration is void, even in the hands of an innocent holder for value. Unger vs. Boas, 13 Pa., 601; Manning vs. Manning, 8 Ala., 138.

It was not contended before the Court below that the testimony offered established the defense beyond all doubt, but that the numerous independent and circumstantial facts

proved, warranted their admission to the jury, as showing the hypothesis of the defense to be exceedingly probable.

In relying upon this kind of testimony, no necessary or invariable connection of facts is required (per Parke, J., 3 B. and A. D. 890), but simply that the circumstances should be so strong in themselves as to established the reasonable probability of the fact intended to be proved.

Nor is it necessary that each fact offered in evidence should bear directly upon the issue. It is admissible if it constitutes a link in the chain of proof, although alone it might not justify a verdict in accordance with it (Greenl. Ev., sec. 51, a); and inasmuch as the value of this evidence depends upon the ordinary affairs of life, namely, the process of ascertaining one fact from the existence of another, without the aid of any rule of law, which is the exclusive province of the jury, it is submitted that the Court below committed no error, unless it be shown that it had not only no tendency to prove the issue or to corroborate any of the material facts which tend to it (for if it had no such effect, the jury would disregard it and the plaintiff would not be injured), but also it should further appear before error can be found, that it had a manifest tendency to mislead the jury.

After other evidence, the defendant offered to prove, by one very competent to know, the brother of the defendant, that, whenever the defendant was under the influence of wine or spirits, he had a propensity or habit of going into gambling houses and there gambling, and which he exhibited at no other times. To this evidence the plaintiff objected, but the Court nevertheless admitted the testimony.

The question raised is this: does evidence of the habit or invariable propensity of defendant to gamble when intoxicated, and of the fact of the intoxication at a certain time tend, in connection with the other facts of this case, to prove a transaction of that date to have been the result of gambling? We submit that it does.

The foundation for the admission of all presumptive evidence is, the known relation between like causes producing like effects; and whenever it is known that a certain cause usually produces the same effect the rules of evidence admit either to prove the other. Nor is it necessary that there should be any certain or uniform connection between the two. It is sufficient to raise it to the dignity of evidence, if this connection exists in a majority of cases, or, to apply the principle to this case, if it is found in human experience that men do exhibit, when under the influence of ardent spirits, the same propensities or phenomena, then if such phenomena or habits are proved in regard to them at a certain time, the fact that they do generally exhibit such habits or phenomena, when under intoxication and that they were intoxicated at that particular time is admissible, as tending to prove the issue.

It had been decided again and again by the Courts, in civil as well as in criminal cases, that wherever a particular trait of character is involved in, or is illustrative of, the matter disputed there, the character of the party in that particular trait may be given in evidence. McNalb *vs.* Lockhart, 18 Ga., 495; Greenl. Ev., sec. 54.

Thus, honesty in cases of felony, peaceable disposition or quarrelsomeness when drunk, in those of riot, etc.; chastity in those of seduction and criminal conversation, etc., etc. By the admission of such testimony, the courts recognize the principle contended for, that a man known to act usually in a certain manner under certain circumstances will be presumed to act in the same manner when shown to be subjected to the same circumstances.

The issue in this case involves the question, did the defendant game on January 1, 1857, and were these notes given in consequence of gaming? This is in realty the issue in the case, and, therefore, his habit or character for gaming is admissible, if he had such. The case before the Court presents itself in a stronger light than the adjudi-

cated cases where the general character is admissible, we contrast the testimony. We show, first, his invariable propensity or habit of gaming when excited with spirits, and then we put him by the testimony in that condition at the time the notes are given, and show that the men with whom this transaction took place at that time, were professional gamblers. Parks *vs.* Ross, 11 How., 373.

If an exception involves the sufficiency of the facts proved as this does, it should be shown that the evidence detailed is all which was given to the point. Stearns *vs.* Warner, 2 Ark., 26; Richardson *vs.* Denison, Ark., 210; People *vs.* Bodine, 1Den. 281.

It is nowhere stated in the record that the evidence there recited is all that was given. But the substantial and meritorious ground upon which the learned judge below overruled the said prayer was, that there was testimony given in the case from which a jury might fairly and reasonably find a verdict for the defendant.

The rule of law is too well established to need authority that a demurrer to evidence admits not only the facts stated therein, but also very conclusion which a jury might fairly or reasonably infer therefrom (Parks *vs.* Ross, 1 How., 373); or as applied more particularly to circumstantial evidence, it admits every fact and every conclusion which the proposed evidence conduces to prove. 2 Phil. Ev., 1009.

Tested by these rules, the question at once arises, can no reasonable inference be drawn from the fact that three notes of a wealthy gentleman, all of the same date, in the same handwriting, for the like amount, and of a regular series of 30, 60, and 90 days, given at one time and in the same transaction, are found payable to a professional gambler, at a time when he is a keeper of a public gaming house, and has no other ostensible business, a man of no property, with which he might engage in lawful commerce?

From the fact that the body of each of these notes was in the handwriting of one John R. James, a professional gam-

bler and frequenter of the gambling house of the said payee, and from the additional fact that a fourth of the same series and like handwriting as the others of the same date and for the same amount, is found payable to the order of one John Campbell, who was not only a frequenter of the gaming house of the said Steer, but in his employment as a dealer of faro. We ask, is it not a fair inference from these facts that these notes had their origin in the gaming house of the payee, and in the ordinary business which was carried on there? But these facts do not stand alone. It was further claimed that on the early morning of the very day the notes were given, the defendant was in a grossly intoxicated state, and no more seen that day, and when in that condition he exhibited an invariable habit of frequenting such places, which he did at no other time. Are not the inferences that these notes were made in the common rendezvous of the said gamblers and for a gaming debt, rendered immeasurably stronger when we find the victim of their arts in such a state as to be not only deprived of his judgment, and thereby an easy prey, but from the condition he was in, uncontrollably impelled to gambling?

There are so many circumstances, all interlacing and depending upon each other, and all pointing towards the same result, all reconcilable with the hypothesis of the defense, and improbable with any other, that we respectfully submit that the Court was right in refusing to say to the jury that there was no evidence tending to prove the defense or from which a reasonable inference of its truth might not be drawn.

It is apparent from the whole of this testimony, that while no one isolated fact would warrant the jury in finding their verdict, yet so many are the circumstances each drawn from independent sources that it is hardly possible in human affairs that all these things could have happened, all pointing to the same result, and yet the notes have originated in any other than a gaming transaction.

*13*

MR. CHIEF JUSTICE CARTTER delivered the opinion of the Court:

The proofs in reference to the defendant in this case are that he was irrational when under the influence of liquor. In the case of insanity it would be perfectly competent to prove the idiosyncracies of the insane person. Why not when reduced to the condition of temporary inebriety?

As to the point taken that the plaintiff in this action is a *bona fide* holder and stands in a different position from the payee of the note, the Court cannot perceive the distinction. These notes were condemned by the law and had no virtue even in the hands of an endorsee without notice of their origin.

What would have been the proof if this man Steers had been in court instead of the plaintiff? We would then have presented this case. The defendant, a member of Congress, a member of the bar, and a man in reputable standing is reduced on a festal occasion to inebriety so as to deprive him of all reason and judgment. He is seen going through the streets in this condition at two o'clock in the morning, and that is the last heard of him until the next day, when three gamblers are found in possession of his notes to the amount of $4,000.

It has been argued that the law presumes these notes were given for a valid consideration. But that presumption may be rebutted by the circumstances of the case, and the evidence in this case, if it goes no further, goes far enough to put the plaintiff upon explanation. The fact that none has been given goes to show the true consideration of this transaction and justifies the conclusion that the notes were given for a gambling consideration.

The judgment is affirmed.